CLOSED,INTERP,TRLSET

# U.S. District Court
## District of New Hampshire (Concord)
## CRIMINAL DOCKET FOR CASE #: <u>1:21−cr−00132−JL</u>−1

Case title: USA v. Tapia

Date Filed: 08/02/2021
Date Terminated: 01/14/2022

Assigned to: Judge Joseph N. Laplante

**<u>Defendant (1)</u>**

**Virginia Villicana Tapia**
*TERMINATED: 01/14/2022*

represented by  **Eric Wolpin**
Federal Defender's Office
The Ralph Pill Bldg
22 Bridge St
Concord, NH 03301
603 226−7360
Email: <u>eric_wolpin@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Opening)</u>** | |
|---|---|
| None | |

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| 18 U.S.C. § 1001(a)(2) False Statements (1) | Motion to Transfer Case Pursuant to Fed. R. Crim. P. 21(b); Granted. |

| **<u>Highest Offense Level (Terminated)</u>** | |
|---|---|
| Felony | |

| **<u>Complaints</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

**<u>Plaintiff</u>**

**USA**

represented by  **Anna Dronzek**
US Attorney's Office (NH)

James C Cleveland Federal Bldg
53 Pleasant St, 4th Flr
Concord, NH 03301
603 225–1552
Fax: 603 225–1470
Email: anna.dronzek@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/02/2021 | 1 | | **INDICTMENT as to Virginia Villicana Tapia (1) count 1.** *Original document available in clerk's office.* **(ko)** Modified on 8/13/2021 to : UNSEAL (bt). (Entered: 08/03/2021) |
| 08/02/2021 | 3 | | Praecipe for Warrant by USA as to Virginia Villicana Tapia. (ko) (Entered: 08/03/2021) |
| 08/02/2021 | 4 | | MOTION to Seal Case at Level I until defendant is taken into custody by USA as to Virginia Villicana Tapia. (ko) (Entered: 08/03/2021) |
| 08/03/2021 | | | **ENDORSED ORDER granting 4 Motion to Seal at Level I: Indictment, Arrest Warrant, This Motion, & Docket Text Entries as to Virginia Villicana Tapia (1).** *Text of Order: Granted.* **So Ordered by Magistrate Judge Andrea K. Johnstone. (ko)** (Entered: 08/03/2021) |
| 08/03/2021 | | | Arrest Warrant Issued as to Virginia Villicana Tapia. Original warrant and copies to US Marshal and US Probation.(ko) (Entered: 08/03/2021) |
| 08/13/2021 | | | Arrest of Virginia Villicana Tapia in the Northern District of California. (bt) (Entered: 08/13/2021) |
| 08/13/2021 | | | Case unsealed as to Virginia Villicana Tapia. Defendant taken into custody. NOTICE to Attorneys of Record: The case has been unsealed. All future pleadings shall be filed in accordance with this district's Administrative Procedures for Electronic Case Filing. (bt) (Entered: 08/13/2021) |
| 08/18/2021 | 5 | | Removal Documents Received from District of California (Northern District) as to Virginia Villicana Tapia. (kad) (Entered: 08/18/2021) |
| 08/18/2021 | | | NOTICE OF HEARING as to Virginia Villicana Tapia. Initial Appearance/Arraignment via Video set for 9/1/2021 11:00 AM before Magistrate Judge Daniel J. Lynch. (kad) (Entered: 08/18/2021) |
| 08/24/2021 | 6 | | MOTION to Appoint Counsel with Financial Declaration by Virginia Villicana Tapia. (Attachments: # 1 Financial Affidavit) *Document available in clerks office.* (kad) (Entered: 09/03/2021) |
| 08/27/2021 | | | RESCHEDULING NOTICE OF HEARING as to Virginia Villicana Tapia. Initial Appearance/Arraignment via Video reset for 9/3/2021 02:00 PM before Magistrate Judge Daniel J. Lynch. Interpreter Laura Oyuela has been scheduled.(kad) (Entered: 08/27/2021) |
| 09/03/2021 | 7 | | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Virginia Villicana Tapia. (kad) (Entered: 09/03/2021) |

| 09/03/2021 | | | **ENDORSED ORDER as to Virginia Villicana Tapia approving 7 Waiver of Presence at Arraignment.** *Text of Order: WAIVER APPROVED.* **So Ordered by Magistrate Judge Daniel J. Lynch. (kad)** (Entered: 09/03/2021) |
|---|---|---|---|
| 09/03/2021 | | | NOTICE OF CANCELLATION as to Virginia Villicana Tapia: Initial Appearance/Arraignment via Video reset for 9/3/2021 02:00 PM is cancelled. Waiver of Appearance at Arraignment approved. (kad) (Entered: 09/03/2021) |
| 09/03/2021 | 8 | | Consent to Video/Telephonic Conference and Waiver of Right to Appear in Person for Initial Appearance Fed. R. Crim. P. 5, Arraignment Fed. R. Crim. P. 10, Detention/Bail Review/Reconsideration Hearings 18 U.S.C. Sec. 3142, as to Virginia Villicana Tapia. (kad) (Entered: 09/03/2021) |
| 09/03/2021 | | | **ENDORSED ORDER granting 6 Motion to Appoint Counsel. Eric Wolpin appointed in the case as to Virginia Villicana Tapia (1).** *Text of Order: Request approved. Appoint counsel.* **So Ordered by Magistrate Judge Daniel J. Lynch. (kad)** (Entered: 09/03/2021) |
| 09/03/2021 | | | **ENDORSED ORDER As to Virginia Villicana Tapia: Pursuant to FRCrP 5. In compliance with the Due Process Protections Act, the court issues the following Order: Consistent with Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, the United States is ordered to disclose all exculpatory information, in a timely manner, to the defendant. This information includes, but is not limited to, evidence that is material and is favorable to the accused. The failure to discharge this obligation may result in consequences, including the reversal of any conviction, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings and/or sanctions by the court. As a result of the waiver of arraignment, an oral order was not issued. So Ordered by Magistrate Judge Daniel J. Lynch. (kad)** (Entered: 09/03/2021) |
| 09/03/2021 | 9 | | **ORDER Setting Conditions of Release as to Virginia Villicana Tapia. So Ordered by Magistrate Judge Daniel J. Lynch. (kad)** (Entered: 09/03/2021) |
| 09/03/2021 | | | **TRIAL NOTICE:** Final Pretrial Conference set for 10/26/2021 at 04:00 PM before Judge Joseph N. Laplante. JERS Statement due 10/26/2021. Jury Selection/Trial set for two week period beginning 11/2/2021 at 09:30 AM before Judge Joseph N. Laplante. Any motion to continue shall be filed 1 week before the Final Pretrial Conference or the Final Pretrial will be held as scheduled. In addition to various filing deadlines contained in the local rules, the parties shall also file any in limine motions no later than 10 days prior to the Final Pretrial Conference. Objections to motions in limine shall be filed no later than 3 days prior to the final pretrial conference.(jb) (Entered: 09/03/2021) |
| 09/03/2021 | 10 | | Arrest Warrant Returned Executed on 8/13/2021 as to Virginia Villicana Tapia.(ko) (Entered: 09/09/2021) |
| 09/07/2021 | | | **ENDORSED ORDER as to Virginia Villicana Tapia approving 8 Consent to Video/Telephonic Conference Waiver to Appear in Person.** *Text of Order: APPROVED.* **So Ordered by Magistrate Judge Andrea K. Johnstone. (kad)** (Entered: 09/07/2021) |
| 09/29/2021 | | | **ENDORSED ORDER re trial status report. This case is scheduled for trial in November, 2021. Unless the case has been continued by 10/8/2021, counsel shall file a Joint Trial Status Report on or before that date. Counsel** |

| | | | |
|---|---|---|---|
| | | | **shall meet and confer, and defense counsel shall confer with the defendant, prior to making any submission pursuant to this order. The information provided in the Joint Trial Status report will be used to assist in scheduling the case. The court is no longer using a monthly priority list for trial scheduling. The court anticipates scheduling this for trial in its two–week trial period. So Ordered by Judge Joseph N. Laplante. (jb)** (Entered: 09/29/2021) |
| 10/08/2021 | 11 | | Assented to MOTION to Continue Trial for 60 days (Waiver of Speedy Trial to be filed conventionally) by Virginia Villicana Tapia. (Wolpin, Eric) (Entered: 10/08/2021) |
| 10/13/2021 | 12 | | **ORDER granting 11 Motion to Continue Trial for 60 days in the interest of justice as to Virginia Villicana Tapia (1). So Ordered by Judge Joseph N. Laplante. Final Pretrial Conference reset for 12/28/2021 at 04:30 PM before Judge Joseph N. Laplante. JERS Statement due 12/28/2021. Jury Selection/Trial reset for two week period beginning 1/4/2022 at 9:30 AM before Judge Joseph N. Laplante. (jb)** (Entered: 10/13/2021) |
| 10/26/2021 | | | **ENDORSED ORDER as to Virginia Villicana Tapia.** *Text of Order: To minimize potential exposure to COVID–19 following holiday gatherings and travel, jury selection scheduled for January 4, 2022 is rescheduled to January 11, 2022. The time period of this continuance will be excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) due to the public health considerations associated with conducting criminal jury trials during the COVID–19 pandemic. The court finds that the ends of justice served by ordering this short continuance outweighs the best interest of the public and the defendants right to speedy trial.* **So Ordered by Judge Joseph N. Laplante. (ko)** (Entered: 10/28/2021) |
| 10/28/2021 | | | TRIAL NOTICE: Jury Selection/Trial reset for two week period beginning 1/11/2022 at 09:30 AM before Judge Joseph N. Laplante. Final Pretrial Conference reset for 1/4/2022 at 01:00 PM before Judge Joseph N. Laplante. JERS Statement due 1/4/2022. Any motion to continue shall be filed 1 week before the Final Pretrial Conference or the Final Pretrial will be held as scheduled. In addition to various filing deadlines contained in the local rules, the parties shall also file any in limine motions no later than 10 days prior to the Final Pretrial Conference. Objections to motions in limine shall be filed no later than 3 days prior to the final pretrial conference.(ko) (Entered: 10/28/2021) |
| 12/16/2021 | 13 | | MOTION to Change Venue by Virginia Villicana Tapia. **HEARING REQUESTED.** Follow up on Objection on 12/30/2021. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Wolpin, Eric) (Entered: 12/16/2021) |
| 12/22/2021 | | | TRIAL REMINDER: There is an upcoming trial in this case. Any Motion to Continue shall be filed 1 week before the Final Pretrial Conference or the Final Pretrial will be held as scheduled. Motions in limine shall be filed no later than 10 days prior to the Final Pretrial Conference. Objections to motions in limine shall be filed no later than 3 days prior to the Final Pretrial Conference.(ko) (Entered: 12/22/2021) |
| 12/22/2021 | 14 | | Assented to MOTION to Continue Trial 30 days (Waiver of Speedy Trial to be filed conventionally) by Virginia Villicana Tapia. (Wolpin, Eric) (Entered: |

| | | | |
|---|---|---|---|
| | | | 12/22/2021) |
| 12/23/2021 | 15 | | **ORDER granting 14 Assented to Motion to Continue Trial in the interest of justice as to Virginia Villicana Tapia (1). So Ordered by Judge Joseph N. Laplante. Final Pretrial Conference reset for 1/25/2022 at 09:00 AM before Judge Joseph N. Laplante. JERS Statement due 1/25/2022. Jury Selection/Trial reset for two week period beginning 2/1/2022 at 09:30 AM before Judge Joseph N. Laplante. (ko)** (Entered: 12/23/2021) |
| 12/28/2021 | | | **RESCHEDULING NOTICE OF HEARING** (time change only) as to Virginia Villicana Tapia. Final Pretrial Conference reset for 1/25/2022 at 10:00 AM (from 9:30 AM) before Judge Joseph N. Laplante. (jb) (Entered: 12/28/2021) |
| 01/03/2022 | 16 | | Assented to MOTION for Leave to File Late Response to Defendant's Motion to Transfer by USA as to Virginia Villicana Tapia. (Attachments: # 1 Exhibit United States' Proposed Filing) (Dronzek, Anna) (Entered: 01/03/2022) |
| 01/04/2022 | | | **ENDORSED ORDER granting 16 Assented to MOTION for Leave to File Late Response to Defendant's Motion to Transfer as to Virginia Villicana Tapia (1).** *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* **So Ordered by Judge Joseph N. Laplante. (ko)** (Entered: 01/04/2022) |
| 01/05/2022 | 17 | | OBJECTION by USA as to Virginia Villicana Tapia re 13 MOTION to Change Venue . (Dronzek, Anna) (Entered: 01/05/2022) |
| 01/12/2022 | 18 | | Assented to MOTION to Continue Trial for 60 days (Waiver of Speedy Trial to be filed conventionally) by Virginia Villicana Tapia. (Wolpin, Eric) (Entered: 01/12/2022) |
| 01/14/2022 | | | **ENDORSED ORDER granting 13 Motion for Change of Venue as to Virginia Villicana Tapia (1).** *Text of Order: Granted. The balance of factors identified in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243–44 (1964) and prior decisions from this court favor transfer. See, e.g., United States v. Muratoski, 413 F. Supp. 2d 8, 9 (D.N.H. 2005); United States v. Pires, 21–CR–114–LM, ECF Doc. 19, (D.N.H. Dec. 9, 2020); United States v. Gonzales, 20–CR–17–SM (D.N.H. Nov 16, 2020); United States v. Eiles, 19–CR–55–01–JL, ECF Doc. 17 at \*2 (D.N.H. Aug. 28, 2019); United States v. Montejano, 19–CR–51–JD, ECF Doc. 17 (D.N.H. Aug. 17, 2019); United States v. White, 04–CR–219–SM, 2005 WL 2093029 at \*1 (D.N.H. August 26, 2005). The clerk shall transfer the case to the United States District Court for the Northern District of California.* **So Ordered by Judge Joseph N. Laplante. (ko)** (Entered: 01/14/2022) |
| 01/14/2022 | | | **ENDORSED ORDER denying as moot re 18 Assented to Motion to Continue Trial in the interest of justice as to Virginia Villicana Tapia (1).** *Text of Order: Denied as moot.* **So Ordered by Judge Joseph N. Laplante. (ko)** (Entered: 01/14/2022) |
| 01/14/2022 | | | ORDER OF TRANSFER (Rule 21) to Northern District of California as to Virginia Villicana Tapia. (ko) (Entered: 01/14/2022) |

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: Anna Dronzek (anna.dronzek@usdoj.gov, april.wood@usdoj.gov,
caseview.ecf@usdoj.gov, usanh.ecfcriminal@usdoj.gov, usanh.ecfdocket@usdoj.gov), Eric
Wolpin (brandy_fantasia@fd.org, elizabeth_sousa@fd.org, eric_wolpin@fd.org)
--Non Case Participants:
--No Notice Sent:

Message-Id:2456037@nhd.uscourts.gov
Subject:Activity in Case 1:21-cr-00132-JL USA v. Tapia Rule 21 - Transfer Out
```
Content–Type: text/html

## U.S. District Court

## District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 1/14/2022 at 4:36 PM EST and filed on 1/14/2022

| | |
|---|---|
| **Case Name:** | USA v. Tapia |
| **Case Number:** | 1:21–cr–00132–JL |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **ORDER OF TRANSFER (Rule 21) to Northern District of California as to Virginia Villicana Tapia. (ko)**


**1:21–cr–00132–JL–1 Notice has been electronically mailed to:**

Anna Dronzek &nbsp &nbsp anna.dronzek@usdoj.gov, April.Wood@usdoj.gov, CaseView.ECF@usdoj.gov, USANH.ECFCriminal@usdoj.gov, USANH.ECFDocket@usdoj.gov

Eric Wolpin &nbsp &nbsp eric_wolpin@fd.org, brandy_fantasia@fd.org, elizabeth_sousa@fd.org

**1:21–cr–00132–JL–1 Notice, to the extent appropriate, must be delivered conventionally to:**

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: Anna Dronzek (anna.dronzek@usdoj.gov, april.wood@usdoj.gov,
caseview.ecf@usdoj.gov, usanh.ecfcriminal@usdoj.gov, usanh.ecfdocket@usdoj.gov), Eric
Wolpin (brandy_fantasia@fd.org, elizabeth_sousa@fd.org, eric_wolpin@fd.org)
--Non Case Participants: US Marshal (adele.duchesneau@usdoj.gov,
brenda.mikelson2@usdoj.gov, eugene.robinson2@usdoj.gov, kathleen.renaud@usdoj.gov,
kimberly.dow@usdoj.gov, melissa.heiss@usdoj.gov, nh.courts@usdoj.gov), US Probation
(nhpdb_cmecf@nhp.uscourts.gov)
--No Notice Sent:

Message-Id:2456027@nhd.uscourts.gov
Subject:Activity in Case 1:21-cr-00132-JL USA v. Tapia Order on Motion to Continue Trial
Content-Type: text/html
```

## U.S. District Court

### District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 1/14/2022 at 4:20 PM EST and filed on 1/14/2022

| | |
|---|---|
| **Case Name:** | USA v. Tapia |
| **Case Number:** | 1:21-cr-00132-JL |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 ENDORSED ORDER denying as moot re [18] Assented to Motion to Continue Trial in the interest of justice as to Virginia Villicana Tapia (1). *Text of Order: Denied as moot.* So Ordered by Judge Joseph N. Laplante. (ko)


**1:21-cr-00132-JL-1 Notice has been electronically mailed to:**

Anna Dronzek &nbsp &nbsp anna.dronzek@usdoj.gov, April.Wood@usdoj.gov, CaseView.ECF@usdoj.gov, USANH.ECFCriminal@usdoj.gov, USANH.ECFDocket@usdoj.gov

Eric Wolpin &nbsp &nbsp eric_wolpin@fd.org, brandy_fantasia@fd.org, elizabeth_sousa@fd.org

**1:21-cr-00132-JL-1 Notice, to the extent appropriate, must be delivered conventionally to:**

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: Anna Dronzek (anna.dronzek@usdoj.gov, april.wood@usdoj.gov,
caseview.ecf@usdoj.gov, usanh.ecfcriminal@usdoj.gov, usanh.ecfdocket@usdoj.gov), Eric
Wolpin (brandy_fantasia@fd.org, elizabeth_sousa@fd.org, eric_wolpin@fd.org)
--Non Case Participants: US Marshal (adele.duchesneau@usdoj.gov,
brenda.mikelson2@usdoj.gov, eugene.robinson2@usdoj.gov, kathleen.renaud@usdoj.gov,
kimberly.dow@usdoj.gov, melissa.heiss@usdoj.gov, nh.courts@usdoj.gov), US Probation
(nhpdb_cmecf@nhp.uscourts.gov)
--No Notice Sent:

Message-Id:2456022@nhd.uscourts.gov
Subject:Activity in Case 1:21-cr-00132-JL USA v. Tapia Order on Motion for Change of Venue
Content-Type: text/html
```

## U.S. District Court

## District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 1/14/2022 at 4:17 PM EST and filed on 1/14/2022

| | |
|---|---|
| **Case Name:** | USA v. Tapia |
| **Case Number:** | 1:21–cr–00132–JL |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 ENDORSED ORDER granting [13] Motion for Change of Venue as to Virginia Villicana Tapia (1). *Text of Order: Granted. The balance of factors identified in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243–44 (1964) and prior decisions from this court favor transfer. See, e.g., United States v. Muratoski, 413 F. Supp. 2d 8, 9 (D.N.H. 2005); United States v. Pires, 21–CR–114–LM, ECF Doc. 19, (D.N.H. Dec. 9, 2020); United States v. Gonzales, 20–CR–17–SM (D.N.H. Nov 16, 2020); United States v. Eiles, 19–CR–55–01–JL, ECF Doc. 17 at \*2 (D.N.H. Aug. 28, 2019); United States v. Montejano, 19–CR–51–JD, ECF Doc. 17 (D.N.H. Aug. 17, 2019); United States v. White, 04–CR–219–SM, 2005 WL 2093029 at \*1 (D.N.H. August 26, 2005). The clerk shall transfer the case to the United States District Court for the Northern District of California.* So Ordered by Judge Joseph N. Laplante. (ko)


**1:21–cr–00132–JL–1 Notice has been electronically mailed to:**

Anna Dronzek &nbsp &nbsp anna.dronzek@usdoj.gov, April.Wood@usdoj.gov, CaseView.ECF@usdoj.gov, USANH.ECFCriminal@usdoj.gov, USANH.ECFDocket@usdoj.gov

Eric Wolpin &nbsp &nbsp eric_wolpin@fd.org, brandy_fantasia@fd.org, elizabeth_sousa@fd.org

**1:21–cr–00132–JL–1 Notice, to the extent appropriate, must be delivered conventionally to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | No. 1:21-CR-132-JL |
| | ] | |
| VIRGINIA TAPIA | ] | |
| | ] | |

## MOTION TO TRANSFER CASE PURSUANT TO FED. R. CRIM. P. 21(b)

The defendant, through Counsel, Eric Wolpin, respectfully moves to transfer this case to the United States District Court for the Northern District of California pursuant to Federal Rule of Criminal Procedure 21(b) for convenience and in the interest of justice. The defendant lives in the proposed receiving district and the majority of witnesses are from California rather than New Hampshire.

## INTRODUCTION

Virginia Tapia is charged in this district with one count of making a false statement under 18 U.S.C. § 1001(a)(2). ECF 1. The indictment alleges that she lied about her identity in connection with a 2017 United States Passport Renewal Application. *Id.* Ms. Tapia lives and works in California and has done so for many years. She currently has a residence, friends, and a job in that state. She requests that the Court transfer her case to the Northern District of California for trial pursuant to FED R. CRIM. P. 21(b) for her and the witness's convenience and because it is in the interest of justice.

## LEGAL STANDARD

FED R. CRIM. P. 21(b) provides that, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for

the convenience of the parties, any victim, and the witnesses, and in the interest of justice." District courts exercise "broad discretionary power" in ruling on motions to transfer and "generally consider" the factors set forth in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). *United States v. Muratoski*, 04-CR-179-SM, 413 F. Supp. 2d 8, 9 (D.N.H. Apr. 5, 2005).

The *Platt* factors include "(1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district or division involved; and (10) any other special considerations relevant to transfer." *Muratoski*, 413 F. Supp. 2d at 9. "Ordinarily the various factors appear in combination, with some pointing in favor of transfer and others against transfer. It is incumbent on the court in such a case to strike a balance and decide which factors seem to be of greatest importance in that case.'" *Muratoski*, 413 F. Supp. 2d at 10 (quoting 2 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 344 at 275). The *Pratt* factors aid the Court in determining whether transfer is warranted under Rule 21(b) and support transfer in this case.

## STATEMENT OF FACTS[1]

### The Passport Renewal Application

In 2006, Ms. Tapia applied for and received a United States passport. *Discovery* at 3. In 2007, she sought to renew the passport. *Id*. On October 6, 2017, Ms. Tapia submitted a

---

[1] The facts cited herein derive from discovery provided by the Government. In setting forth the allegations and presenting these supporting materials, the defense does not admit or stipulate to any of the alleged facts relative to trial.

passport renewal form to the government in which she attested to personal identifying information, including a name, date of birth, and parental information. *Id.* at 36. The renewal document was submitted in California, but ultimately reached the National Passport Office in New Hampshire. *Id.* The statements on the 2017 renewal application form the basis of the present indictment. *Id.* Ms. Tapia's passport paperwork and driver's license shows that she has lived in California for at least the last fifteen years. *Id.*

**The Investigation**

In 2018, the Government flagged Ms. Tapia's 2017 renewal application for further investigation. *Id.* at 1. In 2018, the San Francisco, California field office of the Diplomatic Security Service (DSS) opened an investigation into possible passport fraud relative to the renewal application. *Id.* at 40. That same year, two special agents of DSS's San Francisco office interviewed Ms. Tapia. *Id.* at 7. In March 2020, five special agents of DSS's San Francisco office surveilled Ms. Tapia at her home. *Id.* at 4. Agents also collected documentation from social media accounts and government agencies in Mexico and California. *Id.* at 5, 13-15, 26-33, 38-40. The indictment was returned in New Hampshire on the basis of the investigation conducted in California.

**ARGUMENT**

I. **The *Pratt* factors decisively favor transferring the Defendant's case to California. To avoid burdening the Defendant, defense counsel, trial witness, and, if necessary, sentencing-related witnesses, trial and related hearings in this matter should not be held in New Hampshire.**

There are several National Passport Centers in the United States that process passport renewal applications, including one in Portsmouth, New Hampshire. *See United States v. Montejano*, 19-CR-51-JD, ECF Doc. 17, Order, p.8 n. 3 (D.N.H, Aug. 17, 2019)

("There are processing centers in Arkansas, Arizona, and Louisiana, and the government has previously represented to the courts 'that most passport applications made in the northeastern states are processed in Portsmouth,' which suggests that most cases in New Hampshire should not involve applications from California or other distant states.").

The government has regularly prosecuted passport renewal fraud cases involving out-of-state defendants in this district. In the past, the government prosecuted such cases under the passport fraud statute, 18 U.S.C. § 1542, until the First Circuit held that venue under that statute lies in the district where the passport application was executed. *United States v. Salinas*, 373 F.3d 161, 165 (1st Cir. 2004) ("Based on traditional principles of statutory interpretation, there is simply no justification for laying venue in a location other than the one district in which all the criminal conduct occurred."). Passport renewal fraud cases are currently prosecuted in this district under 18 U.S.C. § 1001 and/or 18 U.S.C. § 1028A(a)(1). Unlike with 18 U.S.C. § 1542, a charge under 18 U.S.C. § 1001 provides venue in New Hampshire.

Even where venue is proper, FED R. CRIM. P. 21(b) authorizes the Court to transfer a case for convenience and the interest of justice. Passport renewal cases have been the subject of frequent motions to change venue in this district as defendants, relevant witnesses, and the alleged offense conduct are regularly centered out-of-state. The Court predicted the prevalence of these motions after *Salinas*, noting in in *Muratoski*, that "[t]hese cases will likely raise venue transfer issues somewhat routinely." 413 F. Supp. 2d at 12.

Judges in this district have transferred a growing number of similar cases where the defendant lived in a distant state. *See United States v. Pires*, 21-CR-114-LM, ECF Doc. 19, (D.N.H. Dec. 9, 2020) (transferring 1001(a) and 1028A(a)(2) case from New Hampshire to district of defendant's residence in California under facts similar to those in the present case);

4

*United States v. Gonzales*, 20-CR-17-SM (D.N.H. Nov 16, 2020) (transferring 1001(a) case from New Hampshire to district of defendant's residence in California under facts similar to those in the present case); *United States v. Eiles*, 19-CR-55-01-JL, <u>ECF Doc. 17 at</u> *2 (D.N.H. Aug. 28, 2019) (transferring 1001(a) case from New Hampshire to district of defendant's residence in Arizona, where, "aside from one National Passport Center witness, every other witness in this case lives outside New Hampshire."); *United States v. Montejano*, 19-CR-51-JD, <u>ECF Doc. 17</u> (D. N.H. Aug. 17, 2019) (transferring Section 1001 passport fraud renewal prosecution from New Hampshire to district of defendant's residence in California); *United States v. White*, 04-CR-219-SM, <u>2005 WL 2093029</u> at *1 (D. N.H. August 26, 2005) (transferring a charge brought "under <u>18 U.S.C. § 1001</u> (false statements) for conduct that amounts to passport fraud" from New Hampshire to district of defendant's residence in New York); *United States v. Muratoski*, 413 F. Supp. 2d at *12 (transferring Section 1001 passport fraud prosecution from New Hampshire to district of defendant's residence in Illinois).

As the Court explained in *Muratoski*:

> Creative charging no doubt serves legitimate purposes, and there are some practical reasons for bringing these cases in New Hampshire. For one, the Passport Center's location here necessarily means that many violations are routinely identified in this district. Relevant documents are generally found here (applications, supporting statements, etc.), as are potential government witnesses. And, local prosecutors entertain a legitimate pragmatic concern that prosecutors in other districts may not be so willing to pursue these cases, given the disparity in caseloads and available resources.

> On the other hand, it has become clear to this court that the defendants indicted on these charges often live hundreds of miles away, have no personal contacts at all with this district, are poor or just getting by economically, are supporting families, and must pay substantial sums to travel to and stay in New Hampshire on multiple occasions (e.g., to meet with counsel and to attend arraignment, bail hearings, motions hearings, plea hearings or trial, and possibly a sentencing hearing). Additionally, if witnesses are to be called by a defendant,

> whether at trial or sentencing, they are more likely to be located near the defendant's home than here, making their appearances in this district difficult and burdensome.

*Muratoski*, 413 F. Supp. 2d at 8. In the present case, the *Pratt* factors clearly support transfer, and the Court should transfer venue to Ms. Tapia's home district for her convenience and in the interest of justice. *See, e.g., United States v. Miller*, 314 F.R.D. 574, 579 (S.D. Ohio 2016) (transferring case to California from Ohio after considering *Pratt* factors); *United States v. Campestrini*, 993 F. Supp. 2d 69 (D.P.R. 2014) (transferring case to Florida from Puerto Rico after considering *Pratt* factors). The application of the relevant *Pratt* factors to the facts of this case are detailed below.

1. **The Location of the Defendant**.

Ms. Tapia is a long-term resident of northern California. She works as a server in a California restaurant. She has a stable residence and personal connections within the local community. Requiring Ms. Tapia to travel back and forth to New Hampshire to prepare for and attend his trial and/or other in-person hearings presents a significant hardship. *See Muratoski*, 413 F. Supp.2d at 11 (transfer appropriate in part because "it is of course a physical, emotional, and economic hardship for this defendant to face trial in New Hampshire"). The distance between her West Coast home district and New Hampshire is nearly as great as between any two districts in the continental United States. One-way travel would require a full day's worth of time and expense. Travel by a means other than airplane is not feasible. As discussed in *Muratoski*, long distance travel "is expensive and generally requires overnight accommodations" and weighs in favor of transfer. 413 F. Supp. 2d at 11. In light of the current epidemic, lengthy airplane travel and overnight accommodations pose additional health risks for Ms. Tapia and the community. Finally, transferring would conform

to the principal that "[d]efendants, ordinarily, should be tried where they reside." *Muratoski*, 413 F. Supp. 2d at 11 (citing *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984)).

**2.      The Location of Possible Witnesses**.

The San Francisco field office of DSS investigated this case. Aside from one or possibly two witnesses from the National Passport Center in New Hampshire, who would testify to receiving a passport renewal document via the mail, all other likely trial witnesses live in California. Discovery identifies eight government agents (Keenan, Main, Higgins, Bernier, Frechette, McFarlane, Kim, and Froio) in the San Francisco office who conducted investigation, surveillance, and interviews. *Id.* at 3-4. The Defense anticipates that the Government would introduce testimony from these California-based officers. It appears from Discovery that no substantive investigation was conducted outside of California.

Witnesses likely to play a role in a potential sentencing hearing are also relevant to this analysis. *See Muratoski*, 413 F. Supp. 2d at 11 ("Defendant's witnesses, whether at trial or, *equally importantly, at sentencing* in the event of a conviction or plea, will likely be from the [defendant's home] area and their attendance in New Hampshire will not be as easily or as inexpensively obtained, even assuming the government will provide transportation and lodging.") (emphasis added). In this case, Ms. Tapia has connections to her California community. Counsel regularly speaks with a supportive bilingual housemate who serves as an informal translator for some communications. Ms. Tapia's ties to California include years of employment and personal relationships. Ms. Tapia has California-based supporters who may be interested in attending court hearings and speaking on the defendant's behalf at a potential sentencing hearing. The distance between supporters and potential sentencing-related witnesses and this district supports a transfer of venue.

3.     **The Location of Events Likely to Be in Issue.**

All events related to this offense other than receipt of the document occurred in California. *See United States v. Kaluanya*, 09-CR-107-SM, 2009 WL 3255211 at *3 (D.N.H. Oct. 7, 2019) ("Next, as defendant points out, many of the events likely to be at issue took place in Texas and Louisiana."). The key events in this case—the alleged misrepresentation and the submission of the application—occurred in California. Additionally, as noted above, the investigation that followed was based in California and involved witnesses from California. *See Muratoski*, 413 F. Supp. 2d at 11 ("On balance, the government's discovery of the alleged false statement in this district is not so critical as to warrant trial here.").

4.     **The Location of Documents and Records Likely to Be Involved.**

Although the location of the documents is of lesser importance as they can easily be moved, they remain a consideration under *Pratt. Muratoski*, 413 F. Supp. 2d at 11 (citing *United States v. Posner*, 549 F. Supp. 475, 478 (S.D.N.Y 1982). Aside from the passport application, none of the key documents and records at issue in this case are in New Hampshire. Many documents (*i.e.* driver licenses) were obtained from California.

5.     **The Disruption of Defendant's Business if the Case is not Transferred.**

Ms. Tapia is employed as a server at a California restaurant. The restaurant business has been particularly hard hit by the pandemic. Ms. Tapia earns enough money to subsist, but she has little disposable income. She is not salaried and makes money on a per shift basis. Taking time off from her job to come to New Hampshire would cause significant financial hardship as she would lose income and would be required to pay for cross-country travel. *See*

*United States v. Haley*, <u>504 F. Supp. 1124, 1128</u> (E.D. Pa. 1981) ("Defending criminal charges should not include the penalty of financial ruin where the trial might be conducted properly and legally in a forum near defendants' homes and businesses.").

**6.      The Expense to the Parties.**

As discussed above, holding trial in New Hampshire would cause the Defendant substantial hardship, as she would have to both take time off work and pay for "travel, lodging, and subsistence while in New Hampshire." *Muratoski*, <u>413 F. Supp. 2d at 11-12</u>. In addition to the financial hardship to Ms. Tapia, the expenses borne by the Federal Defender should also be considered. A trial in New Hampshire may require trips to California by counsel and/or an investigator. Furthermore, should the case remain in New Hampshire, witnesses for trial and/or sentencing from California would have to travel to New Hampshire and be housed and fed here.

**7.      The Location of Counsel**.

If this motion is granted and the case is transferred to California, it would likely be handled by an Assistant United States Attorney and an attorney from the Federal Defender's Office in San Jose, California or other CJA counsel. *See Muratoski*, <u>413 F. Supp. 2d at 12</u>. Ms. Tapia was arrested in California on this charge in August 2021. The Northern District of California appointed Assistant Federal Public Tamara Crepet of the San Jose officer of the Federal Public Defender to represent Ms. Tapia at her initial appearance. *United States v. Tapia*, 21-MJ-71294-MAG-1, (N.D. Cal) (Docket Report). Attorney Crepet addressed the initial question of pretrial release and is familiar with Ms. Tapia's situation and background and the nature of the offense. ECF Docs. 3-6. Should venue be transferred, Counsel

anticipates that Ms. Tapia would be represented by local counsel from the Public Defender's Officer or other local, competent counsel.

8.      **The Accessibility of the Place of Trial**.

While New Hampshire is not inaccessible, the Northern District of California is undoubtedly more accessible for the reasons discussed above**. _See United States v. Farmer_, 13-162-DRD, 2013 U.S. Dist. LEXIS 184349 at *1, *15 (D.P.R. 2013).

9.      **Any Other Special Considerations Relevant to Transfer**.

Adding to the considerations discussed above, the ongoing pandemic has made interstate travel substantially more difficult, dangerous, costly, and time-consuming. The pandemic related requirements would have the same effect for the Government's witnesses who, other than the Passport Center worker, would be traveling by airplane.

Lastly, Ms. Tapia notes that by filing a motion to transfer the case to her home district, she waives an objection to trying this case in the Northern District of California. _See United States v. Acherman_, 140 F. Supp. 3d 113, 117 (D. Mass 2015) (allowing motion to transfer and ruling that "a motion to transfer constitutes waiver of any venue objections to the" receiving district) (citing _United States v. Aronoff_, 463 F. Supp. 454, 457 n. 2 (S.D.N.Y 1978); _United States v. Miller_, 314 F.R.D. 574 (S.D. Ohio 2016) (granting motion to transfer and ruling that "even assuming that none of the conduct alleged in the Ohio mail fraud counts began or passed through the Northern District of California, improper venue would _not_ hinder prosecution if Defendants waive issue, which all Defendants have done in this case, both expressly and impliedly, by filing the motions seeking transfer.") (emphasis in original) (footnote omitted). Thus, should the Court grant this motion, the Government may continue

its efforts to pursue this case. It would simply do so at greater convenience and with less hardship to the Defendant, Counsel, and witnesses.

The Government, through AUSA Anna Dronzek, and she objects to this motion.

WHEREFORE, for the reasons noted above, the defendant, Virginia Tapia, respectfully moves the Court to transfer this case to the Northern District of California for trial pursuant to R. CRIM. P. 21(b) or schedule a hearing on the matter.

Respectfully submitted

/s/ Eric Wolpin
Eric Wolpin
N.H. Bar #18372
Assistant Federal Public Defender
Eric_Wolpin@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2021, the above document was served electronically upon all counsel of record through the CM/ECF filing system.

/s/ Eric Wolpin

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-132-JL |
| | ) | |
| Virginia Villacana Tapia | ) | |

### Government's Objection to Defendant's Motion to Transfer Case
### Pursuant to Fed. R. Crim. P. 21(b)

The United States of America, by John J. Farley, United States Attorney for the District

of New Hampshire, hereby objects to the defendant's Motion to Change Venue (ECF No. 14),

for the reasons below.

Under Rule 21(b), the Court has discretion to transfer this case to another district for the

convenience of the parties and witnesses, and in the interest of justice.  Fed. R. Crim. P. 21(b).

In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964), the Supreme Court

identified the following factors to consider in ruling on a Rule 21(b) motion:

> (1) location of [the] defendant; (2) location of possible witnesses; (3) location of
> events likely to be in issue; (4) location of documents and records likely to be
> involved; (5) disruption of defendant's business unless the case is transferred; (6)
> expense to the parties; (7) location of counsel; (8) relative accessibility of place of
> trial; (9) docket condition of each district or division involved; and (10) any other
> special elements which might affect the transfer.

Courts have held that "[a]s a general rule a criminal prosecution should be retained in the

original district," although "there are circumstances where transfer is appropriate." *United States*

*v. Estrada*, 880 F. Supp. 2d 478, 481-82 (S.D.N.Y. 2012) (*citing to United States v. Posner*, 549

F.Supp. 475, 477 (S.D.N.Y.1982).

<u>Venue Generally</u>

As a threshold matter, the District of New Hampshire is the only jurisdiction in which the United States would be able to meet its burden of proving venue,[1] and was the only jurisdiction in which this case could have been properly charged.

The defendant is charged with making a material false statement on an Application for Passport by Mail (Form DS-82), the form used to renew an expired passport. A large proportion of renewal applications filed in the United States are adjudicated at the National Passport Center ("NPC") in Portsmouth, New Hampshire, which is one of only four passport centers around the country.[2] There is no correlation between the physical location of the applicant and the location of the passport center that ultimately processes their mailed application; the National Passport Center processes the majority of mailed applications, and therefore receives applications from across the country, not just the northeastern United States. Applicants send their renewal applications to the NPC via the U.S. Postal Service or a private or commercial carrier through Citibank in either Irving, Texas, or Philadelphia, Pennsylvania.[3] Citibank is the fiscal agent for

---

[1]Ordinarily, the United States bears the burden of proving venue by a preponderance of the evidence at trial. *United States v. Scott*, <u>270 F.3d 30, 34</u> (1st Cir. 2001). If the defendant's motion is granted, the United States acknowledges that it would be relieved of this burden because the defendant waived her right to proof of venue in her motion to transfer the case.

[2] The other passport centers are in Arkansas, Louisiana, and Arizona. https://travel.state.gov/content/travel/en/passports/requirements/where-to-apply/passport-agencies.html.

[3]This procedure is different from that used to file an initial application for a passport. A different form is used for an initial passport application and it is typically filed with a "passport agent" at a U.S. Post Office. *United States v. Salinas*, <u>373 F.3d 161, 162</u> (1st Cir. 2004). Renewal applicants who live in California, Florida, Illinois, Minnesota, New York, or Texas send their applications to Irving; all others, and applicants seeking expedited review of their applications, send their applications to Philadelphia. There is no direct correlation between where an applicant lives and where their renewal application will ultimately be adjudicated.

the U.S. State Department.  Each renewal application must include a check or money order as payment of a passport fee.  Citibank removes and processes the payments and forwards the renewal applications to the NPC for adjudication.  In fiscal year 2018, the NPC adjudicated about 4.5 million renewal applications.  The efficient administration of the passport renewal system requires that Citibank initially process all renewal applications in bulk.  This precludes examining the envelope each application is mailed in to determine the postmark or preserving the envelopes to forward to the NPC with the applications.

Thus, in almost every passport renewal case, the only evidence of venue available to the United States is that an application containing a materially false statement was received by the passport center that processed it – here, the NPC in the District of New Hampshire.  The District of New Hampshire was the only jurisdiction in which the United States could meet its burden of proving venue, making it the only district in which charges could have been properly initiated.

Platt Factors

The primary *Platt* factors weighing against transfer of venue are location of government witnesses and the docket condition of each district involved.

Regarding government witnesses, an essential witness for the government at trial in this case would be Fraud Prevention Management Specialist Myrna Gutierrez from the NPC.  The NPC employs Fraud Prevention Management Specialists to address concerns about the legitimacy of applications, guide an initial investigation into potential fraud, and refer the case to Diplomatic Security, the law enforcement arm of the Department of State, as necessary.  Ms. Gutierrez would be expected to testify that the defendant's renewal application using the identity of a U.S. citizen reached the NPC on or about November 17, 2017; was flagged due to indicators

of fraud; and was subsequently referred to Diplomatic Security for further investigation of the apparent fraud.

Although the duties of Fraud Prevention Management Specialists involve reviewing renewal applications for signs of fraud, they are not law enforcement agents. Their duty assignment is the NPC, and their regular duties require their presence at that facility to review passport applications. Should the defendant's motion be granted, the United States will produce Ms. Gutierrez in the Northern District of California. However, her extended absence from the NPC for what is expected to be crucial but brief testimony will create scheduling and other logistic difficulties at the NPC. Most of these problems would be avoided if this case remained in New Hampshire and Ms. Gutierrez minimized her time away from the NPC by testifying in this Court.

This argument is not intended to overstate how burdensome it would be to the NPC if this case were transferred to the Northern District of California. If necessary, the NPC can rearrange its staffing roster to account for Ms. Gutierrez' absence to testify out-of-state in this case. However, while the transfer of a particular passport fraud case may not impose a hardship on the United States on an individual basis, the cumulative effect of multiple transfers of such cases will likely prove very disruptive to the efficient operation of the NPC. Part of the mission of the NPC is to protect the integrity of the United States' passport system by identifying fraudulent applications, and given how the mail-in renewal application system works, the burden of identifying fraudulent applications across the country falls largely on the NPC. Its efforts in that regard should not result in forcing the NPC to compromise the efficient administration of the passport system by rearranging duty rosters and workloads to account for the absence of key personnel while they testify in other districts on passport fraud matters.

4

The defendant references additional potential government witnesses, agents in the San Francisco office who conducted investigation, surveillance, and interviews, as a basis to hold trial in the Northern District of California.  However, because the Department of State regularly rotates its agents' assignments every two years, most of those potential witnesses are no longer located in California.  Therefore, California holds no advantage over New Hampshire for agent witnesses who would need to travel for a trial in this case.

Transferring this case would also be ill advised because the impact of the defendant's alleged crime and most of the events likely to be at issue in this case occurred at the NPC.  Most of the documents and records likely to be introduced at trial were received by or are located at the NPC.  Although these documents may be transferred to another district for trial, it would nevertheless be more efficient to try this case in the District of New Hampshire where the evidence is located.

Denying the defendant's motion would also serve the efficient administration of justice, implicating the ninth *Platt* factor ("docket condition of each district or division involved").  Given the relative dockets of this Court and of the court for the Northern District of California, this Court is better positioned to retain this case than the Northern District of California is to absorb it.  For instance, during the 12-month period ending June 30, 2021, this district (served by five district court judges) saw the filing of 205 criminal cases involving 257 criminal defendants, as well as commencement of 1,041 civil cases.  In contrast, the Northern District of California (admittedly, served by nineteen district court judges) saw the filing of 360 criminal cases[4]

---

[4] This is significant decrease from the 12 months preceding June 2020, which saw 509 cases charged; while statistics are not easily available, these numbers are likely depressed by limitations on grand jury proceedings imposed to reduce the spread of COVID-19.

involving 1,208 criminal defendants, and commencement of 10,049 civil cases.[5]  Even with more district court judges, the docket is considerably more crowded in the Central District of California than in this district.  Moreover, COVID-19 has wrought havoc on court trial schedules throughout the country.

Finally, the government has an interest in the efficient marshalling of its resources.  The U.S. Attorney's Office in this district has made a commitment to the Department of State to address passport fraud identified at the NPC.  Given the proportion of applications that flow through the NPC, venue for a large proportion of such cases lies only in New Hampshire.  The individual cases tend to be non-complex and do not pose an excessive burden.  Nonetheless, centralizing their prosecution in one district provides important continuity and efficient use of resources, by minimizing duplication of efforts around the country, in districts that do not have the kind of established relationships with the NPC and Diplomatic Security that this district has developed.

For the foregoing reasons the United States respectfully requests that the defendant's motion to transfer venue be denied.

---

[5] Statistics are available at Statistical Tables for the Federal Judiciary – June 2021, https://www.uscourts.gov/statistics-reports/statistical-tables-federal-judiciary-june-2021, specifically, Table D— U.S. District Courts—Criminal Statistical Tables for the Federal Judiciary (Criminal Defendants Filed, Terminated, and Pending (Including Transfers)), https://www.uscourts.gov/statistics/table/d-cases/statistical-tables-federal-judiciary/2021/06/30; Table D-3—U.S. District Courts–Criminal Statistical Tables For The Federal Judiciary (Criminal Defendants Filed, by Offense and District) https://www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2021/06/30; and Table C-3—U.S. District Courts–Civil Statistical Tables for The Federal Judiciary (Civil Cases Filed, by Jurisdiction, Nature of Suit, and District), https://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal-judiciary/2021/06/30 (all last viewed January 2, 2022).

A supporting memorandum of law has not been filed because relevant authority is cited herein.

Respectfully submitted,

JOHN J. FARLEY
United States Attorney

Dated: January 3, 2022       By: /s/*Anna Dronzek*
              Anna Dronzek
              Assistant United States Attorney
              Colorado Bar No. 43912
              United States Attorney's Office
              53 Pleasant Street, 4th Floor
              Concord, NH  03301
              (603) 225-1552
              anna.dronzek@usdoj.gov

AO 199A (Rev. 12/11) Order Setting Conditions of Release                          USDCNH-40 (5/20)

# UNITED STATE DISTRICT COURT
## District of New Hampshire

UNITED STATES OF AMERICA

|                | v.                | ORDER SETTING CONDITIONS OF RELEASE |

Virginia Villicana Tapia                   Case No.   1:21-CR-132-01-JL

IT IS ORDERED that the release of the defendant is subject to the following conditions:

☒ 1.   The defendant shall not commit any offense in violation of federal, state, or local law while on release in this case.

☒ 2.   The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. 14135a.

☒ 3.   The defendant shall immediately advise the court, defense counsel, and the U.S. Attorney in writing before any change in address and telephone number.

☒ 4.   The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed or as directed.

☐ 5.   The defendant shall appear at _____  _____, on _____ at _____ AM   or as otherwise notified.

### Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community, it is FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

☐ 6.   The defendant is placed in the custody of: (*address to be redacted from electronic version of document entered on CM/ECF*):

_____
_____
_____ Tel. No. _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____
*(Custodian or Proxy)*

AO 199A (Rev. 12/11) Order Setting Conditions of Release                              USDCNH-40 (5/20)

☐ 7.  The defendant shall:
  ☐ (a)  Report on a regular basis as directed by the supervising officer.
  ☐ (b)  Maintain or actively seek employment.
  ☐ (c)  Refrain from possessing a firearm, destructive device, or other dangerous weapons.
  ☐ (d)  Surrender any firearm(s) to:
          ☐ Clerk, U.S. District Court, 55 Pleasant St., Concord, NH.
          ☐ Other: _____.
          and provide written verification to the supervising officer.
  ☐ (e)  Surrender any passport to:
          ☐ Clerk, U.S. District Court, 55 Pleasant St., Concord, NH.
          ☐ Other: _____.
          ☐ by: _____.
  ☐ (f)  Obtain no passport.
  ☐ (g)  Submit to any method of testing required by the supervising officer for determining whether the defendant is using a
          prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a
          sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.
  ☐ (h)  Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of
          any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.
  ☐ (i)  Meaningfully participate in a program of inpatient or outpatient substance abuse treatment, which may include may
          include medication assisted treatment, if deemed advisable by the supervising officer and do not discontinue
          any treatment program without the prior approval of the supervising officer.
  ☐ (j)  Be detained until he/she can be released directly into an inpatient treatment facility. Further hearing
          to be held upon the completion of the program or upon discontinuation for any reason. Defendant shall promptly
          notify the court, Assistant U.S. Attorney and the supervising officer of his/her discontinuation of the program or
          the anticipated program completion date and shall appear for a bail review hearing as scheduled.
  ☐ (k)  Restrict travel to the State(s) of New Hampshire and _____.
          ☐ Travel to _____ for work purposes only.
          ☐ Travel to _____ for court purposes only.
          ☐ Other: _____.
          Any other travel must be pre-approved by the supervising officer.
  ☐ (l)  Avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential
          witness in the subject investigation or prosecution, including but not limited to:
          _____
          _____
          ☐ Those individuals identified on the list provided to defendant and his/her counsel at the hearing.
          ☐ Contact is permitted with _____, but defendant shall not discuss this case.
          ☐ Other: _____.
  ☐ (m)  Have no unsupervised contact with any minor children.
          ☐ Other: _____.
  ☐ (n)  Refrain from    any use of alcohol or    refrain from the excessive use of alcohol.
  ☐ (o)  Participate in the following home confinement program components and abide by all the requirements of the
          program:
          ☐ (1)  Curfew: defendant is restricted to his/her residence every day
                  ☐ from _____ to _____; or
                  ☐ as directed by the supervising officer;
          ☐ (2)  Home Detention: defendant is restricted to his/her residence at all times except for employment,
                  education, religious services, medical, substance abuse or mental health treatment, attorney visits, court
                  appearances, court-ordered obligations, or other activities as pre-approved by the supervising officer; or
          ☐ (3)  Home Incarceration: defendant is restricted to his/her residence at all times except for medical needs or
                  treatment, religious services, and court appearances pre-approved by the supervising officer.

☐ (4)   The home confinement program will include electronic monitoring or other location verification system. Defendant shall pay all or part of the cost of the program based on his/her ability to pay as determined by the supervising officer.

☐ (p)   Refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. 802, unless prescribed by a licensed medical practitioner.

☐ (q)   Refrain from purchasing, possessing, distributing, administering, or otherwise using any psychoactive substances (e.g. synthetic marijuana, bath salts, kratom, etc.), whether or not intended for human consumption, without preapproval of the supervising officer.

☐ (r)   Participate in a mental health program which shall include medical, psychological, or psychiatric treatment as directed by the supervising officer and do not discontinue any mental health program without preapproval of the supervising officer.

☐ (s)   Defendant shall take all mental health medications as prescribed by his/her treating physician.

☐ (t)   Execute, and do not withdraw or revoke, authorizations for the supervising officer to communicate and obtain information from his/her health care providers.

☐ (u)   Execute a secured unsecured bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property: _____
_____.

☐ (v)   Post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described money: _____
_____.

☐ (w)   Execute a bail bond with solvent sureties in the amount of _____.

☐ (x)   Maintain or commence an education program.

☐ (y)   Maintain residence at a halfway house or community corrections center, as deemed necessary by the supervising officer.

☐ (z)   Comply with the following residential requirements or restrictions: _____
_____.
   ☐ No overnights away from the residence without preapproval of the supervising officer.
   ☐ Any change in residence must be preapproved by the supervising officer.

☐ (aa)   Comply with the following employment requirements or restrictions: _____
_____.
   ☐ Refrain from engaging in an occupation, business, profession, or volunteer activity that would require or enable you to _____ without preapproval of the supervising officer.

☐ (bb)   Report as soon as possible, to the supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

☐ (cc)   Other:

☐ 8.   Participate in the following computer restriction or monitoring program:

☐ (a)   Refrain from the possession or use of a computer, electronic communication or data storage device or media, or any internet capable media device unless preapproved by the supervising officer and submit to the examination of any device owned or under the control of the defendant.

☐ (b)   No access to the internet unless preapproved by the supervising officer.

☐ (c)   Computer monitoring software or hardware shall be installed on defendant's computer which will be subject to periodic and unannounced examination by the supervising officer. These examinations may include retrieval and copying of data related to online use from the computer equipment and any internal or external peripheral devices. Defendant shall pay for the cost associated with the monitoring program based upon his/her ability to pay as determined by the supervising officer.

☐ (d)   Defendant shall not access any social media websites, messaging services, and applications that have chat or messaging functions without the approval of the supervising officer (e.g., Facebook, Snapchat, Instagram, WhatsApp, Kik, etc.)

☐ (e)   Defendant shall provide the supervising officer with all current online screen names and passwords and he/she shall not create or use any new profiles or screen names without the prior approval of the supervising officer.

☐ (f)   Defendant shall surrender his/her smartphone to the supervising officer immediately. He/she can request that it be returned to him/her for trade-in purposes only. If he/she trades in the smartphone proof of the trade-in shall be provided to the supervising officer.

☐ 9.   Participate in a sex offender-specific assessment treatment as directed by the supervising officer.

☐ 10.  Provide access to and execute authorizations and do not revoke /withdraw authorizations, for the release of any requested financial information as requested by the supervising officer.

☐ (a)   Do not incur any new credit charges or open any new lines of credit without preapproval of the supervising officer.

☐ (b)   Other:

☐ 11.  Abide by all the mandatory, standard and special conditions of supervised release as previously imposed by this court.

**<u>Advice of Penalties and Sanctions</u>**

**TO THE DEFENDANT:**

**YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:**

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a federal offense while on pre-trial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony, or a term of imprisonment of not more than one year, if the offense is a misdemeanor.  This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment or a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to 10 years of imprisonment and a $250,000 fine or both to tamper with a witness, victim, or informant; to retaliate or attempt to retaliate against a witness, victim, or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:

(1)   an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2)   on offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)   any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)   a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense.

In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

AO 199A (Rev. 12/11) Order Setting Conditions of Release                    USDCNH-40 (5/20)

## Acknowledgment of Defendant

    I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

Date:    9.3.21                     */S/ Eric Wolpin\**

                                         Signature of the Defendant      *\*Signed on the Defendant's behalf with her permission after review*

## Directions to United States Marshal

    ☐ The United State Marshal is ORDERED to keep the defendant in custody until notified by U.S. Probation or the court that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judge at the time and place specified, if still in custody.

    ☐ The defendant shall be detained until notified by U.S. Probation or the court that he/she can be released directly to an inpatient treatment facility.

    ☒ The defendant is ORDERED released after processing.

Date:    9/3/2021

          ☒     United States Magistrate Judge
          ☐     United States District Judge

cc:      Defendant
        U.S. Attorney
        U.S. Marshal
        U.S. Probation
        Defense counsel

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| **v.** | ) | **No. 1:21-cr-132-JL-01** |
| | ) | |
| **Virginia Villicana Tapia** | ) | |

_____

## <u>Indictment</u>

The Grand Jury charges:

At all times relevant to this indictment:

1.      The "National Passport Center" is a facility operated by the United States Department of State, Bureau of Consular Affairs, for the filing, processing, and adjudication of United States Passport Applications (forms **DS-11**) and United States Passport Renewal Applications (forms **DS-82**), which are used to apply for passport renewals by mail.  The National Passport Center is located at 207 International Drive, Portsmouth, New Hampshire.

2.      Title 22, Code of Federal Regulations, Section 51.2 provides that a passport may be issued only to a United States national.  Under Title 22, Code of Federal Regulations, Section 50.1(d), a national is a citizen of the United States or a noncitizen owing permanent allegiance to the United States.  A non-citizen national is someone who was: (i) born in American Samoa or Swain's Island; (ii) found in American Samoa or Swain's Island at a young age; (iii) a child of a non-citizen United States national who meets certain physical presence or residence requirements; or (iv) born in the Commonwealth of the Northern Marianas Islands and opted to become a non-citizen national instead of a citizen of the United States. 8 U.S.C. §§ 1408, 1101(a)(29); Public Law 94 – 241 § 302.

1

3.     The defendant, **Virginia Villicana Tapia**, was neither a citizen nor a national of the United States.

COUNT ONE<br>[False Statements – 18 U.S.C. § 1001(a)(2)]

4.     In and around October 2017 to November 2017, in the District of New Hampshire and elsewhere, the defendant,

**Virginia Villicana Tapia,**

in a matter within the jurisdiction of the United States Department of State, an agency of the executive branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in connection with a United States Passport Renewal Application (form DS-82).  **Tapia** executed the passport renewal application, which was subsequently received at the National Passport Center.  To induce and secure the issuance of a United States Passport, **Tapia** falsely stated on the application a name, date of birth, and place of birth that were not her own.  **Tapia** knew that this statement and representation was false when made.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

/s/ Foreperson_____
Grand Jury Foreperson

JOHN J. FARLEY
Acting United States Attorney

*/s/ Anna Dronzek*_____
Anna Dronzek
Assistant United States Attorney

Date: August 2, 2021

2